**United States District Court**
For the Northern District of California

1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                 NORTHERN DISTRICT OF CALIFORNIA
7

8 RALPH AND LYNETTE DAIRY, *et al.*,     No. C-13-1518 EMC

9           Plaintiffs,

10      v.                     **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

11 CHARLTON BONHAM, Director of the California Department of Fish and Wildlife, in

12 his official capacity,           **(Docket No. 21)**

13           Defendant.
   _____/

14
15

16       Plaintiffs are six individuals and a limited liability company involved in commercial

17 Dungeness crab fishing, who have sued to invalidate California Fish & Wildlife Code § 8276.5

18 (Dungeness Crab Trap Limit Program), seeking declaratory and injunctive relief for various alleged

19 federal constitutional violations.  The motion currently before the Court is Defendant's motion to

20 dismiss several of Plaintiffs' claims for relief on federal constitutional grounds.

21       Having considered the parties' briefs and accompanying submissions, as well as the

22 argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part Defendant's motion to

23 dismiss.

24              **I.  FACTUAL & PROCEDURAL BACKGROUND**

25       Plaintiffs are six individuals and one limited liability company who make a living in the tri-

26 state Dungeness crab fishery – Oregon, California, and Washington.  *See* Docket No. 34 (First

27 Amended Complaint ["FAC"] ¶¶ 1, 3).  Plaintiffs challenge California's Dungeness Crab Trap Limit

28 Program, codified at Calif. Fish & Wildlife Code § 8276.5.  *Id*. at ¶ 1.  The statute provides:

United States District Court

For the Northern District of California

> (a) In consultation with the Dungeness crab task force . . . the director shall adopt a program, by March 31, 2013, for Dungeness crab trap limits for all California permits.
>
> (1) The program shall contain seven tiers of Dungeness crab trap limits based on California landings receipts under California permits between November 15, 2003, and July 15, 2008.[1]

Calif. Fish & Wildlife Code § 8276.5(a)(1).  Subdivision (a)(1) of the California's Dungeness Crab Trap Limit Program provides that all permitholders are to be assigned to a tiering scheme.  Each tier sets the maximum number of crab trap permits (called "tags") a permitholder is allocated.  A top tier assignment, for example, allocates a maximum of 500 tags.  The higher the tier assignment, the more trap gear a permitholder may deploy.  The statute also contains an appeals procedure.  *See* Calif. Fish & Wildlife Code § 8276.5, subdivisions (a)(1) and (6)(A).

Plaintiffs are not California residents.  *See* Docket No. 34 (FAC ¶ 3).  Rather, Plaintiffs allege they are nonresident Dungeness crab permitholders who fish Dungeness crab in California waters, primarily in federal waters adjacent to California.[2]  *Id.*  Plaintiffs allege they have lawfully landed (*i.e.*, offloaded to landing docks) crab outside of California during the qualifying period.  *Id.* at ¶¶ 9-13.  Because the statute does not count crab landed outside of California, Plaintiffs allege they received lower tier assignments and as a consequence permitted to deploy fewer Dungeness crab trap tags.  *Id.* at ¶ 3.  Plaintiffs do not dispute they are still permitted to fish for Dungeness crab in California.

Plaintiffs filed the current suit against the director of the California Department of Fish and Wildlife ("Defendant"), challenging the statute on various constitutional grounds.  *See* Docket Nos. 1, 34.  Defendant has moved the Court to dismiss (a) Plaintiffs' first (Commerce Clause), second (Equal Protection Clause), third (Right to Free Movement), fifth (Procedural Due Process), sixth (Bill of Attainder), and seventh claims (Bill of Attainder as to Plaintiffs Dairy, Speir, and Moore

---

[1] This time period is referred throughout this memorandum as the "qualifying period."

[2] These waters adjoining a given state are referred to as the EEZ, or exclusive economic zone.  The "EEZ," or the "exclusive economic zone" is effectively federal oceanic waters over which the United States proclaimed exclusive jurisdiction in Presidential Proclamation 5030 of March 10, 1983.  *See* Calif. Pub. Resources Code § 71520.  It begins where California waters end – three nautical miles from shore – until 200 nautical miles off shore.

only) on Fed. R. Civ. P. 12(b)(6) grounds; and (b) Plaintiffs' fourth (Privileges and Immunities) and ninth (Declaratory Relief) claim on Fed. R. Civ. P. 12(b)(1) grounds. *See* Docket No. 21. Plaintiffs filed an amended complaint concurrently with their opposition. *See* Docket Nos. 26, 34. The parties agree that Defendant's motion applies to and is not mooted by Plaintiffs' FAC.

## II.   <u>DISCUSSION</u>

A.   <u>Motion to Dismiss – Failure to State a Claim</u>

   1.   <u>Legal Standard</u>

   Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

   2.   <u>Commerce Clause</u>

   The Commerce Clause of the U.S. Constitution is an affirmative grant of power to Congress to regulate interstate commerce. *Nat'l Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012). It is also a negative constraint on the States restricting them from enacting laws that would burden interstate commerce. *Id.* This negative constraint is commonly referred to as the "dormant Commerce Clause." *Id.* Congress may, however, confer "upon the States an ability to restrict the flow of interstate commerce." *W. & S. Life Ins. Co. v. State Bd. of Equalization of Cal.*,

United States District Court

For the Northern District of California

1   451 U.S. 648, 652 (1981).  If Congress so ordains, "any action taken by a State within the scope of

2   the congressional authorization is rendered invulnerable to Commerce Clause challenge." *Id.*

3        Stated another way, the dormant Commerce Clause is only operative when Congress is silent

4   on an issue affecting interstate commerce.  *See Pac. Merch. Shipping Ass'n v. Goldstene*, 639 F.3d

5   1154, 1177 (9th Cir. 2011).  Thus, where Congress has acted, there is no dormant Commerce Clause

6   challenge.  *See Hoeven v. Minnesota*, 456 F.3d 826 (8th Cir. 2006); *Schutz v. Thorne*, 415 F.3d 1128

7   (10th Cir. 2005).

8        The Defendant contends that the "Reaffirmation of State Regulation of Resident and

9   Nonresident Hunting and Fishing Act of 2005" ("Reaffirmation Act of 2005") constitutes

10  Congressional conferral of authority and thus precludes Plaintiffs' dormant Commerce Clause

11  challenge to Calif. Fish & Wildlife Code § 8276.5.  The Court agrees.

12       The Reaffirmation Act of 2005 states:

13          SEC. 6036. STATE REGULATION OF RESIDENT AND
            NONRESIDENT HUNTING AND FISHING.
14

15          (b) DECLARATION OF POLICY AND CONSTRUCTION OF
            CONGRESSIONAL SILENCE.

16          (1) IN GENERAL. – It is the policy of Congress that it is in the public
            interest for each State to continue to regulate the taking for any
17          purpose of fish and wildlife within its boundaries, including by means
            of laws or regulations that differentiate between residents and
18          nonresidents of such State with respect to the availability of licenses or
            permits for taking of particular species of fish or wildlife, the kind and
19          numbers of fish and wildlife that may be taken, or the fees charged in
            connection with issuance of licenses or permits for hunting or fishing.
20

21          (2) CONSTRUCTION OF CONGRESSIONAL SILENCE. – Silence
            on the part of Congress shall not be construed to impose any barrier
22          under clause 3 of Section 8 of Article I of the Constitution (commonly
            referred to as the 'commerce clause') to the regulation of hunting or
23          fishing by a State or Indian tribe.

24  Pub. L. No. 109-13, § 6036 (2005) (Capitalization in original).

25       On its face, the Reaffirmation Act of 2005 authorizes the States to regulate, in pertinent part,

26  "the taking of fish . . . for any purpose" by regulations, including ones that regulate the "availability

27  of licenses or permits."  Plaintiffs argue that does not obviate their dormant Commerce Clause claim

28  because the California statute at issue is not covered by the Reaffirmation Act of 2005.  That

United States District Court

For the Northern District of California

1    argument is meritless.  The phrase "availability of licenses or permits" plainly covers the regulatory

2    activity here – the allocation of crab trap tags.  Even assuming the statute did not regulate the

3    "availability of licenses or permits," which the statute plainly does, use of the word "including"

4    indicates the enumerated ways a state may regulate the taking of fish and wildlife is not exhaustive.

5    *See P.C. Pfeiffer Co. v. Ford,* 444 U.S. 69, 77 n. 7 (1979) ("including" means the enumerated items

6    are part of a larger group).

7           If there were any doubt, the legislative history makes clear that by enacting the Reaffirmation

8    Act of 2005 Congress intended to remove the threat to regulation posed by dormant Commerce

9    Clause challenges:  "These provisions are intended to speak directly to the 'dormant commerce

10   clause' basis for the 9th Circuit's decision in Conservation Force v. Manning."  151 Cong. Rec.

11   1995 (2005) (statement of Rep. Mark Udall), 2005 WL 309740 (Westlaw).  In *Conservation Force,*

12   *Inc. v. Manning*, the Ninth Circuit held that the dormant Commerce Clause applied to Arizona

13   regulations placing a 10% cap on nonresident, recreational  hunting of bull elk and antlered deer.

14   *See Conservation Force, Inc. v. Manning*, 301 F.3d 985, 988 (9th Cir. 2002), *cert. denied*, 537 U.S.

15   1112 (2003).  Thus, by enacting the Reaffirmation Act of 2005, Congress appears to have intended

16   to preclude the type of dormant Commerce Clause challenge Plaintiffs now assert in their first claim

17   for relief.

18          Furthermore, even if the dormant Commerce Clause were not entirely obviated, the dormant

19   Commerce Clause's negative constraint upon the States is intended to prevent the enactment of

20   discriminatory laws against nonresidents.  Yet, the statute at issue here does not expressly

21   discriminate on the basis of residency.  In particular, subdivision (a) of the statute provides:

22                  In consultation with the Dungeness crab task force . . . the director
                shall adopt a program, by March 31, 2013, for Dungeness crab trap
23                  limits for **all California permits**.

24   Calif. Fish & Wildlife Code § 8276.5(a) (emphasis added).  Accordingly, the plain language of the

25   statute indicates that the Dungeness Crab Trap Limit Program would apply to all California

26   permitholders, regardless of residency.  The statute differentiates on the basis of place of landings,

27   not residency of the permitholder.  In any event, the congressional authorization to the States

28   embodied in Reaffirmation Act of 2005 expressly *allows* the State to discriminate between residents

and nonresidents.  *See* Pub. L. No. 109-13, § 6036(b)(1) (allowing States to regulate the takings of fish and wildlife "by means of laws and regulations that differentiate between residents and nonresidents").

Plaintiffs contend that the statute is still vulnerable to dormant Commerce Clause challenge because California has regulated beyond its boundaries in contravention of the express terms of the Reaffirmation Act of 2005.  *See* Pub. L. No. 109-13, § 6036 (b)(1) (States are permitted to "regulate the taking for any purpose of fish and wildlife within its boundaries").  But the amendments to the Magnuson-Stevens Fishery Conservation and Management Act, P.L. 109-479, § 302(e), M.S.A. § 306 note; 16 U.S.C. 1856 note (Jan. 12, 2007) ("Reauthorization Act of 2007") extends California's regulatory reach into federal waters (called the EEZ):

> "California may adopt and enforce State laws and regulations governing fishing . . . ***in the exclusive economic zone adjacent to [its waters]***."  Pub. L. 109-479, Sec. 302(e), MSA § 306 note (a) (emphasis added).

The Reauthorization Act of 2007 does provide that California must regulate consistently within and outside its boundaries:

> ". . . [a]ny law or regulation adopted by [California] . . . ***shall apply equally*** to vessels engaged in the fishery in the [EEZ] and . . . in the waters of [California], and without regard to the State that issued the permit. . . . "  *Id*. at (b)(1) (emphasis added).

However, Plaintiffs do not allege irregularity or non-uniformity in California's implementation of its Dungeness Crab Trap Limit Program as applied to California waters versus the EEZ.

Plaintiffs argue that as applied, the program runs afoul of the language "without regard to the State that issued the permit."  That issue was addressed in *Marble v. Dept. of Fish and Wildlife*, where the Oregon court of appeals interpreted this phrase in the context of a constitutional challenge to Oregon's "crab-pot allocation rule."  Plaintiff, a Washington-state permittee who had purchased an Oregon permit, challenged his crab-pot allocation on grounds the rule:

> "impermissibly discriminate[d] against his vessel by failing to count the landings made under his Washington permit during the qualifying period, which included crab caught in the EEZ adjacent to Oregon, because [his fishing vessel] did not have an Oregon permit during those years."

United States District Court
For the Northern District of California

1   *Marble v. Dept. of Fish and Wildlife*, 236 Or. App. 54, 71 (2010).  The court upheld the crab-pot

2   allocation rule.  The court reasoned that the Dungeness Crab Trap Act, which was later amended and

3   reauthorized by the Reauthorization Act of 2007, does not apply to state laws that establish crab trap

4   limits for its *own* permittees:

5           "The statute was not intended to prevent a state from regulating the
            number of crab pots its *own* permittees may carry.  Rather, the statute
6           is focused on preventing one state from imposing a crab-pot limit on
            *other* states' vessels that is more restrictive than the crab-pot limit that
7           the state imposes on its own vessels."

8   *Id.* at 73.  The court buttressed its construction of the Act with legislative history:

9           "Subsection 2(b) [(now (b)(1))] specifies that regulations governing
            the Dungeness crab fishery which are issued by a State must apply
10          equally to all vessels within State waters and the exclusive economic
            zone, and to all vessels fishing in waters adjacent to a State, regardless
11          of a vessel's origin.  *Thus, for example, the State of Washington could
            not allow Washington-permitted vessels to carry a certain number of*
12          *crab pots, but prohibit Oregon or California-permitted vessels from
            carrying the same number of crab pots.*"

13

14  H.R. Rep. No. 105-674, 105th Cong., 2d Sess. (1998), at p. 3 (emphasis added).

15          This Court finds the reasoning in *Marble* persuasive.  Here, California's Dungeness Crab

16  Trap Limit Program applies only to California permitholders, which includes nonresident

17  permitholders, and does so equally without regard to residency.  It does not regulate, *e.g.*, permits

18  issued by Oregon.  Accordingly, since the Program only sets limits for California permittees, its

19  California-landings-only rule does not run afoul of the Reauthorization Act of 2007.  Accordingly,

20  Plaintiffs' first claim for relief (Commerce Clause) is dismissed.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

3.      Equal Protection Clause[3]

The Equal Protection Clause provides:  "No state shall . . . deny any person with its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.  When a statute neither impinges upon a fundamental right nor disadvantages a suspect or quasi-suspect class, the appropriate legal standard generally is rational basis, particularly in the filed of economic regulation.  *See Williamson v. Lee Optical of Oklahoma Inc.*, 348 U.S. 483, 491 (1955) (applying rational basis to state regulation of optical care); *F.C.C. v. Beach Commc'n., Inc.*, 508 U.S. 307, 313 (1993) ("In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."); *Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005).  Under the deferential prong of the rational basis test, statutes are generally "presumed valid" and upheld, if the classification drawn by the statute is rationally related to a legitimate state interest.  *Id*.  Such statutes must be "wholly irrational" to violate the Equal Protection Clause.  *Id*.  Accordingly, the "challenger bears the burden of negating every conceivable basis which might support the legislative classification, whether or not the basis has a foundation in the record."  *Id*.[4]

---

[3] The Court rejects Plaintiffs' "as applied" equal protection challenge.  As an initial matter, the Court notes that Plaintiffs' counsel raised the prospect of as-applied challenges for the first time during the hearing.

Even if the claim were cognizable, no sufficient claim is stated here.  A plaintiff may challenge a statute as violating the equal protection clause "on its face" or "as applied" to the plaintiff.  *See U.S. v. Pitts*, 908 F.2d 458, 459 (9th Cir. 1990) (citing Rotunda, Nowak & Young, 3 Treatise on Const. L.: Substance and Procedure § 18.4).  But to make an "as applied" challenge a plaintiff must allege specific facts regarding application of the challenged law.  *See Wal-Mart Stores, Inc. v. City of Turlock*, 483 F. Supp. 2d 987, 997 (E.D. Cal. 2006) (rejecting as-applied challenge where plaintiff's complaint failed to allege facts concerning how ordinance was applied).  Plaintiffs have failed to do so.  In their FAC, Plaintiffs only mount a facial challenge to Calif. Fish & Wildlife Code § 8276.5.  *See* Docket No. 34 (FAC, ¶ 6) ("This suit challenges the constitutionality of the provisions of CFWC § 8276.5 allocating crab vessel permit trap limits and tags on the basis of crab caught pursuant to a California permit and landed in California ports only.").

[4] A more rigorous rational basis standard (sometimes referred to as "rational basis with a bite") has been applied in other situations such as where important but not fundamental rights or sensitive but not suspect classification are involved.  *See, e.g.*, *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) (striking down under rational basis city council decision preventing group home for mentally disabled); *Plyer v. Doe*, 402 U.S. 202 (1982) (invalidating under rational basis portion of statute excluding immigrant children from public schools).  *See Wal-Mart Stores,*

8

United States District Court

For the Northern District of California

1        Even in the context of a motion to dismiss, a plaintiff alleging an equal protection violation

2 must plead a claim that establishes that there is not "any reasonable conceivable state of facts that

3 could provide a rational basis for the classification." *Hettinga v. U.S.*, 677 F.3d 471, 479 (D.C. Cir.

4 2012) (quoting *Dumaguin v. Sec'y of Health and Human Services*, 28 F.3d 1218, 1222 (D.C. Cir.

5 1994)). *See also Aleman v. Glickman,* 217 F.3d 1191 (9th Cir. 2000) (holding at motion-to-dismiss

6 phase that statute favoring widowed over divorced spouses for eligibility for food stamps was not

7 irrational); *Taylor v. Rancho Santa Barbara,* 206 F.3d 932 (9th Cir. 2000) (holding at motion-to-

8 dismiss phase that federal and state statutes allowing mobile home parks to refuse to rent to tenants

9 under 55 years of age survived rational review).

10        In the case at bar, the deferential rational basis test applies.  Plaintiffs do not allege

11 membership in a suspect or quasi-suspect class.  Even if Plaintiffs had so alleged, nonresidents are

12 not a suspect class.  *See Baldwin v. Fish and Game Comm'n of Montana*, 436 U.S. 378, 389 (1978)

13 (applying rational basis to statute that allegedly discriminated against nonresident hunters).  Though

14 Plaintiffs allege impingement upon the "fundamental right to a livelihood," they cite no authority

15 that strict scrutiny applies to regulation of fishing permits.  *See Medeiros v. Vincent*, 431 F.3d 25 n.3

16 (1st Cir. 2005) (collecting cases; dismissing contention that state regulation reducing number of

17 permitted lobster traps infringed upon fundamental right to pursue livelihood or occupation); *Sisk v.*

18 *Texas Parks and Wildlife Dept.*, 644 F.2d 1056, 1058, n. 5 (5th Cir. 1981) ("[commercial] fishing is

19 not a fundamental right" and "commercial fisherman are not a suspect class).  *See generally Dittman*

20 *v. California*, 191 F.3d 1020, n. 5 (9th Cir. 1999) (noting that the Supreme Court has never held the

21 right to pursue one's profession is a fundamental right for Equal Protection purposes).  Therefore,

22 the Court reviews the Dungeness Crab Trap Limit Program, codified at Calif. Fish & Wildlife Code

23 § 8276.5, under a rational basis standard.

24 ─────────────────

25 *Inc. v. City of Turlock*, 483 F. Supp. 2d 1023, 1038, n. 6 (E.D. Cal. 2007) (recognizing
*Cleburne/Romer* approach commonly referred as "rational basis with bite").  *See generally* 3 Ronald

26 D. Rotunda & John E. Nowak, Treatise on Constitutional Law: Substance and Procedure §18.3(b)
(5th ed. 2012); Erwin Chemerinsky, *Constitutional Law: Principles and Policies*, 536 (1997)

27 ("Many argue that the Court in these cases [(referring to *Romer, City of Cleburne*,and other cases)]
applied a different, more rigorous version of the rational basis test – one with 'bite.'  The claim is

28 that there is not a singular rational basis test but one that varies between complete deference and
substantial rigor.").

Because Plaintiffs bear "the burden of negating every conceivable basis which might support the legislative classification," *see Fields*, 413 F.3d at 955, the Court considers the bases identified by either party, as well as any other conceivable basis supported by the record.  Defendant has identified the following possible bases:

- "conservation and management purposes";

- "long term stability [of the Dungeness crab fishery]";

- "increase economic return on investment";

- "promote vessel safety";

- "slow both the race for crab and the increased capitalization of the fishery";[5]

- "[preventing] displace[ment] [of] California permitholders[, 'who have historically landed substantial amounts of crab in California,']6 from high trap allocation tiers from the California program"7;

- "improve the long term sustainability of the fishery";

- "end the glut of crab on the market";

- "decrease safety risks resulting from increased gear in the fishery"; and

- "reduce the amount of derelict gear in the water, which will have both increased safety and environmental benefits."[8]

*See* Docket No. 21 (Mot. at pp. 7-9).

---

[5] The foregoing bases are pulled from Plaintiffs' operative complaint.  *See* Docket No. 34 (FAC ¶ 27).

[6] *See* Docket No. 21 (Mot., at p. 8).

[7] The "displace[ment] of California permitholders" basis is found in the Dungeness Crab Task Force report, dated April 27, 2011, which the Defendant has requested the Court take judicial notice.  *See* Docket No. 22 (Ex. 2 to Def.'s RJN, at p. 4).  Plaintiffs oppose on grounds it is not properly the subject of judicial notice.  *See* Docket No. 25 (Opp'n to Def.'s RJN, at p. 3).  A ruling on this request for judicial notice is not required because the Court may consider any conceivable basis.  *See Roley v. Pierce Cnty. Fire Prot. Dist. No. 4*, 869 F.2d 491, 493 (9th Cir. 1989) (finding courts may consider *hypothetical* bases supporting legislative action, as well as *actual* ones).

[8] The last four bases on this list are found in the legislative history to Calif. Fish & Wildlife Code § 8276.5.  *See* Docket No. 21 (Mot., at p. 9) (citing Docket No. 22 (Ex. 4 to Def.'s RJN)).  As discussed in the preceding footnote, the Court may properly consider hypothetical bases even if found in the legislative history.

The Court finds that Calif. Fish & Wildlife Code § 8276.5 is rationally related to state interests articulated by Defendant. Plaintiffs have failed to overcome the daunting burden of negating every conceivable basis identified by the Defendant. Specifically, Plaintiffs have failed to show that consideration of California landings exclusively is wholly irrational or completely devoid of a rational relationship to achieving any of the conceivable state interests.

Plaintiffs' contention that the statute's only purpose is economic protectionism does not alter the Court's conclusion nor relieve Plaintiffs of their burden. As noted above, under deferential rational basis review, any conceivable basis for the legislation may suffice. Plaintiffs' reliance on *Merrifield v. Lockyer* is misplaced. There, the court found the state licensing scheme to be "economic protectionism for its own sake," only after rebuffing other conceivable bases. 547 F.3d at 986 (rejecting safety, public health, and consumer protection bases). Here, Plaintiffs have not negated the other conceivable bases. Moreover, the Court in *Merrifield* acknowledged in dicta that a statute might be protectionist and still survive rational basis review. *Id.* at n. 15 ("We do not disagree that there might be instances when economic protectionism might be related to a legitimate governmental interest and survive rational basis review.").

Plaintiffs contend that it is error to dismiss a claim where a plaintiff has offered sufficient facts for a court find the statute unconstitutional. *See* Docket No. 26 (Opp'n, at p. 11) (citing *Borden's Farm Products Co. v. Baldwin*, 293 U.S. 194, 213 (1934)). In *Borden's Farm*, plaintiff challenged New York's Milk Control Law on equal protection grounds. The Supreme Court reversed the lower court's dismissal of plaintiff's constitutional challenge because it found the trial record contained insufficient facts to support the rational basis:

> But where the legislative action is suitably challenged, and a rational basis for it is predicated upon the economic facts of a given trade or industry, which are outside the sphere of judicial notice, these facts are properly the subject of evidence and of findings. With the notable expansion of the scope of governmental regulation, and the consequent assertion of violation of constitutional rights, it is increasingly important that when it becomes necessary for the Court to deal with the facts relating to particular commercial or industrial conditions, they should be presented concretely with appropriate determinations upon evidence, so that conclusions shall not be reached without adequate factual support.

United States District Court

For the Northern District of California

293 U.S. at 210.  The Court held that where there is a reasonable likelihood that additional evidence will assist the court in ruling on the statute's constitutionality, then dismissal is inappropriate, especially where the statute is novel or premised on special "economic facts."  Plaintiffs' reliance on *Borden's Farm* is misplaced.  The contemporary standard for rational basis review of economic regulation is governed by the "any conceivable basis test" by *Williamson v. Lee Optical* and its progeny which were decided after *Borden's Farm.  See, e.g., F.C.C. v. Beach Commc'ns, Inc.*, *supra*, 508 U.S. at 313; *Armour v. City of Indianapolis*, Ind., ---- U.S. ----, 132 S. Ct. 2073, 2077 (2012).  To the extent *Borden's Farm* remains viable in the arena of economic regulation,[9] Plaintiffs here do not contend that the asserted rational bases for § 8276.5 are not factually supported, nor do they contend that the statute is based on special economic facts.  It is noteworthy that § 8276.5 requires consultation with the Dungeness crab task force, which is established by § 8276.4 which includes a wide variety of participants.

Accordingly, Plaintiffs' second claim for relief (Equal Protection) is dismissed.

### 4.   Right to Travel

In *Saenz v. Roe*, the Supreme Court concluded that the constitutional "right to travel" embraces three different components:

> "[1] the right of a citizen of one State to enter and to leave another State, [2] the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, [3] for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State."

526 U.S. 489, 500 (1999).  When a state law burdens the right to travel, a fundamental right, the challenged law must be "necessary to further a compelling state interest."  *See Miller v. Reed*, 176

---

[9] *See Eng. v. Louisiana State Bd. of Med. Examiners*, 263 F.2d 661, 673, n. 17 (5th Cir. 1959) (describing ebb-and-flow of Supreme Court jurisprudence from when "state economic regulations were reviewed with a great presumption as to their validity," to the *Lochner* era under which public health and safety laws were struck down on due process grounds, and now to the modern era where "the tide has turn back to a very expressive 'judicial restraint'" as articulated in *Lee Optical*).  *See generally* Brandon S. Swider, *Note, Judicial Activism v. Judicial Abdication:  A Plea for A Return to the Lochner Era Substantive Due Process Methodology*, 84 Chi.-Kent L. Rev. 315, 325 (2009) (noting that although "[the presumption of constitutionality] is a presumption of fact of the existence of factual conditions supporting the legislation" and it is rebuttable, the ability to rebut this presumption has given way to the modern paradigm of "extremely limited judicial review . . . [of] legislation regulating economic activity" set forth in *Lee Optical*.").

F.3d 1202, 1205 (9th Cir. 1999) (noting "[t]he Supreme Court has recognized a fundamental right to interstate travel"); *Peruta v. Cnty. of San Diego*, 678 F. Supp. 2d 1046, 1060 (S.D. Cal. 2010) (citing *Soto-Lopez*, 476 U.S. at 904-905, n. 4 (1986)).  State laws merely having some impact on travel, however, are insufficient to raise a constitutional issue.  Rather, "[a] state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right."  *Soto–Lopez,* 476 U.S. at 903.  Accordingly, minor burdens impacting travel do not constitute a violation of the right to travel. *Miller*, 176 F.3d at 1205.

Defendant contends that to the extent that Plaintiffs' right-to-travel claim is based on the second component identified in *Saenz*, it should be dismissed as duplicative with Plaintiffs' third claim (privileges-and-immunities).  Defendant correctly notes that textual support for the second component is the Privileges and Immunities Clause.  *See Saenz*, 526 U.S. at 501 (noting that second component is "expressly provided for by the text of the Constitution" in the Privileges and Immunities Clause).  However, Plaintiffs base their right-to-travel claim on *Selevan v. New York Thruway Auth.*, 584 F.3d 82 (2nd Cir. 2009), where plaintiffs plainly sought to vindicate the first component articulated in *Saenz*.  *See Peterson v. Martinez*, 707 F.3d 1197, 1212 (10th Cir. 2013) ("The claim at issue in *Selevan* plainly fell into the first category; it was based on 'the right to go from one place to another.'").  Thus, since Plaintiffs do not assert the second component of *Saenz*, the Court rejects the argument that Plaintiffs' right-to-travel claim should be dismissed as duplicative with its privileges-and-immunities claim.

Plaintiffs right-to-travel claim nevertheless fails.  Simply put, the burden on Plaintiffs' right to travel does not rise to the level of a constitutional violation.  Plaintiffs allege Calif. Fish & Wildlife Code § 8276.5 "discriminates against and *penalizes*" nonresidents "who traveled interstate and to harvest California-caught crab and then who travel to land their catch in other states" by failing to consider non-California landings.  *See* Docket No. 34 (FAC ¶ 55) (emphasis added).  First, the statute does not bar non-residents from traveling to California or from fishing in its waters.  Nor does it discriminate on the basis of residency in granting permits.  The statute does not dictate where permittees may reside or fish for crab.  The only palpable impact is on where crab is landed.  At

United States District Court

For the Northern District of California

1   most, Calif. Fish & Wildlife Code § 8276.5 simply creates an incentive to land crab in California; it

2   imposes, at best, a minor burden on the right to travel.  Thus, Plaintiffs' third claim for relief (Right

3   to Travel) is dismissed.

4           5.     <u>Procedural Due Process</u>

5          Both the Fifth[10] and Fourteenth Amendment prohibit governmental action that would deprive

6   a person of "life, liberty, or property without due process of law."  U.S. Const. Amends. V and XIV.

7   In general, when the "action complained of is legislative in nature, due process is satisfied when the

8   legislative body performs its responsibilities in the normal manner prescribed by law."  *See Hotel &*

9   *Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 969 (9th Cir. 2003) (quoting *Halverson v.*

10  *Skagit Cnty.*, 42 F.3d 1257, 1260 (9th Cir. 1995)).  Procedural due process applies to actions which

11  are adjudicatory in nature.  *Harris v. Cnty. of Riverside*, 904 F.2d 497, 501 (9th Cir. 1990) ("the

12  dictates of procedural due process apply only to adjudicatory or administrative government

13  actions").

14         Rather than labels, such as "legislative" or "adjudicative," the analysis is functional, and thus

15  it is the character of the governmental action controls.  *See id.*; *Hotel & Motel Ass'n*, 344 F.3d at 969

16  (noting that the "dictates of due process" cannot be sidestepped by giving governmental action a

17  "legislative moniker" ).  Accordingly, despite an outward appearance as a legislative act, "greater

18  procedural rights may attach where only a few persons are targeted or affected and the state's action

19  'exceptionally affect[s]' them 'on an individual basis.'"  *Harris*, 904 F.23d at 502 (due process

20  violation where county rezoned land pursuant to local law effectively putting plaintiff, an individual,

21  out of business).

22         The act complained of here is legislative in nature.  Calif. Fish & Wildlife Code § 8276.5 is a

23  statute of general applicability promulgated by the California legislature in the ordinary manner

24  ///

25  ///

26

27          [10] The Fifth Amendment does not apply to state or local action, it only reaches federal

28  governmental action. *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (citing *Schweiker v. Wilson*, 450 U.S. 221, 227 (1981)).

14

United States District Court

For the Northern District of California

prescribed by law.  Plaintiffs allege no irregularity in the legislative process.[11]  Section 8276.5 does not single out a small group.  It applies broadly and equally to all permittees in the California state Dungeness crab fishery.  Its promulgation is therefore not adjudicatory.  Accordingly, the Court rejects Plaintiffs' contention that they were entitled by procedural due process to prior notice that "California would consider only California landings."

Plaintiffs rely on *Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977 (9th Cir. 1991) to argue that the statutory scheme that provides insufficient due process.  *See* Docket No. 26 (Opp'n, at p. 16).  In *Alaska Airlines*, plaintiffs challenged a local ordinance that would have reduced the number flights allowed by commercial air carriers, which was promulgated to combat noise.  *Id*. at 987.  The ordinance required an automatic reduction in flights based only upon an airport manager's determination that planes exceeded specified noise levels.  *Id*.  The court struck down the ordinance as unconstitutional because the ordinance failed to provide (a) notice of the adverse determination; and (b) a pre-reduction hearing to challenge the airport manager's determination.  *Id*.

Plaintiffs argue that the scheme established by Calif. Fish & Wildlife Code § 8276.5 similarly restricts traps without due process.  But the statute here does not delegate to an administrator to make fundamental allocation decisions as in *Alaska Airlines*.  Instead, the statute *legislatively* prescribes the fundamental selective criteria here – tags based on California landings between 2003 and 2008.  Plaintiffs' attack on the legislative aspect of the statute on due process grounds is thus meritless.  To hold otherwise would effectively allow permittees to rewrite the statute.  *See e.g.*, *Bakay v. Yarnes*, 431 F. Supp. 2d 1103, 1111 (W.D. Wash. 2006) (rejecting

---

[11] Plaintiffs note that no nonresidents were appointed to Dungeness crab task force, as required by SB 1690.  *See* Docket No. 34 (FAC ¶ 30); Docket No. 26 (Opp'n, at p. 16).  SB 1690 created the Dungeness crab task force and tasked it with making recommendations to the California Legislature and other entities regarding the creation of the Dungeness Crab Trap Limit Program.  *Id.* Plaintiffs do not expressly raise a due process violation in their First Amended Complaint based on the failure to include a nonresident on the Dungeness crab task force.  The gravamen of Plaintiffs procedural due process claim is that the California legislature failed to provide prior notice that only California landings would be considered in allocating trap tags.  *See* Docket No. 34 (FAC ¶ 67).  In any event, even if Plaintiffs did advance such a claim, the failure to follow the dictates of state or local law regarding implementation alone is not a cognizable basis for a federal due process challenge.  *See Jacobs v. Clark Cnty. Sch. Dist.* 526 F.3d 419, 441 (9th Cir. 2008) (noting that failure of school district to consult parents when implementing school uniform policy, as required by implementing regulations, may violate local law, but does not violate the Due Process Clause of the Fourteenth Amendment).

United States District Court
For the Northern District of California

proposal that notice and hearing be given before animal is euthanized despite exigent circumstances

pursuant to statute would impermissibly rewrite the law).

Furthermore, unlike the ordinance in *Alaska Airlines*, § 8276.5 provides for an appeals

process to challenge an initial allocation of crab trap permits:

> (2) Notwithstanding paragraph (1), the *director shall not remove a permitholder from a tier* described in paragraph (1), if, after an allocation is made pursuant to paragraph (1), *an appeal pursuant to paragraph (6) places a permitholder in a tier different than the original allocation.*
>
> [ . . . ]
>
> (6)(A) Any Dungeness crab permitholder may submit to the director an appeal of a trap tag allocation . . . for the purpose of revising upward or downward any trap tag allocation. Any appeal...shall be based on evidence that a permit's California landings were reduced as a result of *unusual circumstances and that these circumstances constitute an unfair hardship*, taking into account the overall California landings history as indicated by landing receipts associated with the permit.

Calif. Fish & Wildlife Code § 8276.5(1), (2), (6)(A) (emphasis added). Thus, even if a procedural

due process rubric were apt, the statute's appeals process provides sufficient process.[12]

Plaintiffs rely on *Bell v. Burson*, 402 U.S. 535 (1971), which is cited in *Alaska Airlines*. In

*Bell*, the statute at issue required automatic suspension of license and registration of drivers involved

an automobile accident unless the driver posted a bond for the amount of damages alleged by

aggrieved parties. The Court held the statute unconstitutional because it failed to provide a pre-

suspension hearing regarding liability before the driver's license and registration was suspended

administratively. Here, as noted above, the deprivation is not adjudicatory but legislatively

prescribed, and in any event, process is provided administratively.

6.     Bill of Attainder

The U.S. Constitution mandates that "No State shall . . . pass any bill of attainder." U.S.

Const. art. I, § 10, cl. 1. A bill of attainder is "a law that legislatively determines guilt and inflicts

---

[12] Nothing in the record indicates that Plaintiffs have lodged an appeal or have received an adverse determination on appeal. Plaintiffs only allege "the [appeals] procedure does not allow out-of-state landings to be considered in appeals." *See* Docket No. 26 (Opp'n, at p. 17, n. 8) (citing Compl. ¶ 70). But they cite nothing to support this assertion.

punishment upon an identifiable individual without provision of the protections of a judicial trial."
*See SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 668 (9th Cir. 2002) (quoting *Nixon v. Adm'r of Gen. Services*, 433 U.S. 425, 468 (1977)).  A statute is an unconstitutional bill of attainder where the statute (1) specifies the affected persons, (2) inflicts punishment, and (3) without a judicial trial.

        a.    <u>Specificity</u>

      The Supreme Court and the Ninth Circuit have identified guideposts for determining whether a statute specifies a particular individual or class within the meaning of the Bill of Attainder Clause.  *Id*. at 669.  To that end, a court should consider (a) whether the statute explicitly names an individual or class, or rather, describes the affected population in terms of general applicability; (b) whether the identity of the individual or class was "easily ascertainable" when the statute was passed; (c) whether the statute defines the individual or class by "past conduct" that operates only as a designation of particular persons; and, finally, (d) whether the provision defines the specific individual or class affected by the "irreversible acts committed by them."  *Id.*

      Calif. Fish & Wildlife Code § 8276.5 does not specify a particular individual or class within the meaning of the Bill of Attainder Clause.  It does not specifically name nonresident permitholders who landed crab outside of California.  As noted above, the statute is one of general applicability that applies broadly and equally to all permitholders.  And while Plaintiffs allege the targeted class is readily ascertainable based on section 7891 permit records,[13] the statute applies to all permittees, including California residents, and does not single out those holding section 7891 permits.

---

    [13] Section 7891 of California's Fish & Wildlife Code requires vessels to obtain a permit to land fish and other wildlife outside of California:

> No person shall use or operate or assist in using or operating . . . , which fishing boat or vessel delivers or by which there is delivered to any point or place other than within this State any fish, mollusks or crustaceans which are caught in, or taken aboard said boat or vessel from, the waters of the Pacific Ocean within this State or on the high seas or elsewhere, unless a permit authorizing the same shall have been issued by the Fish and Game Commission.

Cal. Fish & Wildlife Code§ 7891.  Here, Plaintiffs reference holders of these permits as a proxy for the allegedly targeted class – all nonresident Dungeness crab fisherman who land crab out-of-state.

United States District Court

For the Northern District of California

1  Conversely, the conduct at issue does not operate "only as a designation of particular persons" and

2  potentially encompasses a larger class than those allegedly targeted.  *See SeaRiver*, 309 F.3d at 670

3  (noting the relevant inquiry is "whether the statute is retrospective, or whether it carries the potential

4  to encompass a larger class than the individual or group allegedly targeted.").

5          b.    Punishment

6          In addition to the absence of specificity in targeting an individual or a defined class of

7  persons, the statute is not punitive within the meaning of the Bill of Attainder Clause.  Three

8  inquiries inform whether a statute inflicts punishment on a specified individual or class: (1) whether

9  the statute falls within the historical meaning of legislative punishment; (2) whether the statute,

10 viewed in terms of the type and severity of burdens imposed, reasonably can be said to further

11 nonpunitive legislative purposes; and (3) whether the legislative record "evinces congressional

12 intent to punish."[14]  *SeaRiver*, 309 F.3d at 673 (quoting *Nixon*, 433 U.S. at 475-76).

13         First, Calif. Fish & Wildlife Code § 8276.5 does not inflict legislative "punishment" as it is

14 defined historically.  "Traditionally, bills of attainder sentenced the named individual to death,

15 imprisonment, banishment,[15] the punitive confiscation of property by the sovereign, or erected a bar

16 to designated individuals or groups participating in specific employments or vocations."  Plaintiffs

17 contend that the statute is punitive because (a) it denies them assignment to higher allocation tiers,

18 thereby harming pursuit of their livelihood, and (b) confiscates their property, namely, their property

19 interest in crab permits.  *See* Docket No. 34 (FAC ¶¶ 75 and 80).  However, the denial of permits

---

20

21        [14] Despite using the legislative record to evince an intent to punish in its opposition, *see*
Docket No. 26 (Opp'n, at p. 20), Plaintiffs oppose consideration of legislative history by the
22 Defendant to support a motion to dismiss.  *See* Docket No. 25 (Opp'n to Def.'s RJN, at p. 3).  The
Court rejects Plaintiffs' opposition and finds that it may properly consider legislative history on a
23 motion to dismiss, *see e.g.*, *Palmer v. Stassinos*, 348 F. Supp. 2d 1070, 1077 (N.D. Cal. 2004)
(taking judicial notice of legislative history and court documents at the motion-to-dismiss phase),
24 *order clarified on reconsideration on other grounds*, 419 F. Supp. 2d 1151 (N.D. Cal. 2005).
Further, *Borden's Farm Products Co. v. Baldwin*, does not bar the Court from doing so, as it did not
25 involve a Bill of Attainder Clause challenge.  293 U.S. 194, (1934) (finding inappropriate taking
judicial notice of "economic facts" concerning "commercial and industrial conditions").

26        [15] Though Plaintiffs allege the statute restricts their constitutional right to free movement.
27 "Banishment" is inapplicable because it has traditionally been associated with denial of citizenship,
and "does more than merely restrict one's freedom to go or remain where others have the right to
be." *SeaRiver*, 309 F.3d at 673 (quoting *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d
28 874, 897 (2d Cir. 1996)).

United States District Court
For the Northern District of California

here is like the "mere denial of noncontractual government benefits"; as the court held in *Selective Serv. Sys. v. Minnesota Pub. Interest Research Grp.*, 468 U.S. 841, 853 (1984), such a denial is not a "burden historically associated with punishment." As to their claim that the statute bars "employments or vocations," Plaintiffs have not alleged they are completely or substantially barred from participating in California's Dungeness crab fishery. *See* Docket No. 21 (Mot., at p. 20). *Cf. SBC Communications, Inc. v. F.C.C.*, 154 F.3d 226, 242 (5th Cir. 1998) (complete "bar from participation in certain businesses"); *U.S. v. Lovett*, 328 US. 303 (1946) (permanent bar from government employment); *New York State Trawlers Ass'n v. Jorling*, 16 F.3d 1303, 1312 (2d Cir. 1994) (finding statute placing 100-lobster limit "did not bar trawlers from their occupation"). Cases cited by Plaintiffs are unavailing and distinguishable.[16]

Moreover, Plaintiffs have not rebutted the presumption that Calif. Fish & Wildlife Code § 8276.5 was enacted for a non-punitive legislative purpose. Courts examine three factors to determine whether a statute is punitive under the Bill of Attainder Clause. *See SeaRiver*, 309 F.3d at 674 (citing *Nixon*, 433 U.S. at 475). The factors are: (a) whether the statute's passage has "legitimate justifications" and is a "legitimate regulation of conduct"; (b) whether the statute addresses an immediate or prospective risk; and (c) whether the alternative means of furthering the legislative purpose offered by the aggrieved party would not eliminate the risk that the statute addresses. *Id.* Here, the statute appears to have been enacted in response to *inter alia* the prospective risk to the "long-term sustainability of the California Dungeness crab fishery." *See* Docket No. 23 (Ex. 4 to Alexander Decl., at pg. 4). "An otherwise valid law is not transformed into a bill of attainder merely because it regulates conduct on the part of designated individuals or classes

---

[16] *See Ass'n of Cmty. Organizations for Reform Now (ACORN) v. U.S.*, 692 F. Supp. 2d 260 (E.D.N.Y. 2010). *ACORN* lacks persuasive value because the Second Circuit vacated the district court's bill of attainder holding. *See ACORN v. U.S.*, 618 F.3d 125, 137 (2d Cir. 2010) (temporary denial of federal funding is not a bill of attainder because it is not "disproportionately severe and inappropriate" to constitute punishment *per se* under *Nixon*). As discussed above, *U.S. v. Lovett* is distinguishable because it involved a complete denial of salary. 328 U.S. 303, 316 (finding permanent bar from government service a punishment "of a most severe type"). *Florida Youth Conservation Corp., Inc. v. Stutler*, No. 06-CV-275 (RH-WCS), 2006 WL 1835967 (N.D. Fla. June 30, 2006) involved a complete denial of the opportunity to apply for government contracts, where plaintiff was explicitly named in the statute and plaintiffs business consisted entirely of procuring state contracts.

**United States District Court**
For the Northern District of California

1   of individuals." *See Fresno Rifle and Pistol Club, Inc. v. Van De Kamp*, 965 F.2d 723, 727 (9th Cir.

2   1992) (assault weapons statute a valid exercise of regulatory authority, and not a bill of attainder).

3   The statute is reasonably fashioned to respond to that risk.  Nor have Plaintiffs identified an

4   alternative means to address that risk.

5        Finally, Plaintiffs contend that the intent to punish is clear from the "legislative history" and

6   "legislative record"; Plaintiffs assert the law was intended to:

7        •   **[P]ut a halt to the annual cross border race crabs that**
             **threatens the livelihoods of our fishermen**. *See* Docket No.
8            34 (FAC ¶ 34) (emphasis added).

9        •   "[H]alt . . . the annual cross-border race for crabs that threaten
             the livelihood of our [California] fishermen" and "to protect
10           California's crab fishery from unfair competition from large,
             out-of-state boats." *Id.* at ¶ 35.

11

12  The Court finds that there is no "unmistakably manifest" an intent to punish.  *SeaRiver*, 309 F.3d at

13  676 (finding no unmistakable motive to punish).  A more plausible inference from the legislative

14  history is the legislature's desire to protect the California crab fishery as opposed to a vindictive

15  motive to punish any particular individual or group.

16       In sum, the Court cannot infer "more than a mere possibility" of punitive intent.  *Ashcroft v.*

17  *Iqbal*, 556 U.S. 662, 679 (2009).  Accordingly, because Calif. Fish & Wildlife Code § 8276.5 neither

18  targets Plaintiffs (or a class of which they are members) nor inflicts punishment within the meaning

19  of the Bill of Attainder Clause, the Court dismisses Plaintiffs' sixth and seventh claims for relief

20  (Bill of Attainder).

21  B.   Motion to Dismiss – Lack of Subject Matter Jurisdiction

22       1.   Legal Standard

23       Standing addresses whether the plaintiff is the proper party to bring the matter to the court

24  for adjudication.  *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir.

25  2010).  Because standing pertains to federal court's subject matter jurisdiction, it is properly raised

26  in a Rule 12(b)(1) motion to dismiss.  *Id.*  On such a motion, the district court must accept as true all

27  material allegations in the complaint, and must construe the complaint in the nonmovant's favor.  *Id.*

28  at 1121.

United States District Court

For the Northern District of California

2.    Privileges and Immunities (as to Plaintiff F/V Brooke Michelle only)

The Privileges and Immunity Clause of Article IV, section 2 of the U.S. Constitution provides:  "The **citizens** of each state shall be entitled to all privileges and immunities of citizens in the several states."  U.S. Const. art. IV, § 2, cl. 1 (emphasis added).  Because they are not citizens for purposes of this clause, courts have held that corporations may not bring privileges-and-immunities claims.  *See Shell Oil Co. v. City of Santa Monica*, 830 F.2d 1052, n. 7 (9th Cir. 1987) (noting that corporations are not "citizens" for purposes of privileges-and-immunities clause); *Merrifeld v. Lockyer*, 547 F.3d 978, 980, n. 1 (9th Cir. 2008) (noting plaintiff, a corporation, lacked standing to bring privileges-and-immunities claim) (citing *W. Turf Ass'n v. Greenberg*, 204 U.S. 359, 363 (1907); Rotunda, Nowak & Young, 3 Treatise on Const. L.: Substance and Procedure, § 12.7(d)(i), n. 27 (5th ed.) (collecting cases).

The Court holds that plaintiff F/V Brooke Michelle lacks standing to bring a privileges-and-immunities claim as it is not a natural person.  Here, plaintiff F/V Brooke Michelle is a limited liability company.  Plaintiffs cite no authority for why the rule barring corporations from bringing privileges-and-immunities claims would not also bar unincorporated business associations, such as limited liability companies.  Instead, Plaintiffs ask the Court to join the "judicial trend" of granting these entities a right traditionally enjoyed by natural persons.  The Court has discerned no such trend, at least as it applies to Privileges and Immunities Clause.  The authorities cited by Plaintiffs do not contradict this conclusion.  Although Plaintiffs contend that plaintiff F/V Brooke Michelle is "effectively an assumed business name of Robert Jackson," *see* Docket No. 26 (Opp 'n, at p. 15), the Court declines to disregard the separate existence of this business entity.

Although neither the Ninth Circuit nor the Supreme Court has extended the rule in W. Turf to unincorporated associations (such as LLCs), this Court's sister circuits have declined to do so. *See e.g., American Trucking Associations, Inc. v. Larson*, 683 F.2d 787, 790 (3d Cir. 1982) (declining to consider a privileges-and-immunities claim asserted by a federation of trucking association); *W.C.M. Window Co., Inc. v. Bernardi*, 730 F.2d 486, 493 (7th Cir. 1984) (finding unincorporated associations were not "natural persons" and thus not "citizens" for purposes of the

United States District Court

For the Northern District of California

1  Privileges and Immunities Clause).  Accordingly, Plaintiffs' fourth claim for relief (Privileges and

2  Immunities) as to plaintiff F/V Brooke Michelle is dismissed.

3          3.  <u>Declaratory Relief</u>

4         Defendant has moved to dismiss Plaintiffs' ninth claim (Declaratory Relief) on grounds it

5  seeks retrospective relief, which is barred by the Eleventh Amendment.  *See* Docket No. 21 (Mot., at

6  p. 23).  Plaintiffs' operative complaint clearly requests: "a judicial declaration that the statute and its

7  implementation and enforcement **will deprive** Plaintiffs of their rights under the Constitution and

8  laws of the United States."  *See* Docket No. 34 (FAC ¶ 95).  Plaintiffs seek thus seek prospective

9  relief.  Accordingly, the Court rejects Defendant's argument here because the Court finds that

10 Plaintiffs do not seek retrospective declaratory relief.

11        Defendant further contends that to the extent Plaintiffs are not seeking retrospective

12 declaratory relief, the motion should nevertheless be granted because it "serves no purpose not

13 already served by the [tenth] cause of action for injunctive relief."  *See* Docket No. 21 (Mot., at p.

14 23) (citing *Pub. Serv. Comm'n v. Wycoff*, 344 U.S. 237, 247 (1952)).  In *Wycoff*, the Court declined

15 to grant declaratory relief because doing so would preempt a decision already committed to an

16 administrative agency, violating principles of comity.  *Id.*  Because these are not the facts at bar, the

17 Court finds *Wycoff* is unavailing.

18        The Court construes Defendant's motion requesting the Court to dismiss Plaintiffs' ninth

19 claim for declaratory relief as being based on the argument that injunctive relief is an adequate

20 substitute.  This is not the law.  A district court cannot decline a request for declaratory relief merely

21 because of the existence of another "adequate legal remedy."  *See State of Cal. By and Through*

22 *Dept. of Water Res. v. Oroville-Wyandotte Irr. Dist.*, 409 F.2d 532, 535 (9th Cir. 1969) (affirming

23 denial of declaratory and injunctive relief, refusing to prejudge issues properly before administrative

24 agency).  Accordingly, Defendant's motion to dismiss Plaintiffs' ninth claim for relief (Declaratory

25 Relief) is denied.

26 ///

27 ///

28 ///

### III.   CONCLUSION

Based on the foregoing, the Court rules as follows:

1.      Plaintiffs' first, second, third, fifth, sixth, and seventh claims for relief are **DISMISSED** with prejudice.

2.      The fourth claim for relief is **DISMISSED** with prejudice but only as to plaintiff F/V Brooke Michelle.

3.      Defendant's motion to dismiss Plaintiffs' ninth claim for relief is **DENIED**.

This order disposes of Docket No. 21

IT IS SO ORDERED.

Dated:  July 23, 2013

_____
EDWARD M. CHEN
United States District Judge