UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH AND LYNETTE DAIRY, *et al.*, | No. C-13-1518 EMC |
| Plaintiffs, | |
| v. | **ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION AND MOTION FOR LEAVE TO AMEND** |
| CHARLTON BONHAM, Director of the California Department of Fish and Wildlife, in his official capacity, | |
| | **(Docket Nos. 52, 53)** |
| Defendant. _____/ | |

Plaintiffs are a six individuals and a limited liability company involved in commercial Dungeness crab fishing, who have sued to invalidate California Fish & Game Code § 8276.5, seeking declaratory and injunctive relief for various alleged federal constitutional violations. The Court issued its order granting Defendant's motion to dismiss all but two of Plaintiffs' claims. Currently before the Court are two of Plaintiffs' motions: (1) Motion for Leave to Amend, and (2) Motion for Reconsideration. Plaintiffs' motions came on for hearing before the Court on September 26, 2013. For the reasons set forth below, Plaintiffs' motions are **DENIED**.

## I.  FACTUAL & PROCEDURAL BACKGROUND

The factual background in this action are set forth more fully in the Court's order granting dismissal of certain of Plaintiffs' claim. *See* Docket No. 46. On April 5, 2013, Plaintiffs filed the current lawsuit against the director of the California Department of Fish and Wildlife ("Defendant"), challenging California Fish & Game Code section 8276.5 (Dungeness Crab Trap Limit Program regulations) on various constitutional grounds. Defendant moved to dismiss certain of Plaintiffs' claims: first (Commerce Clause), second (Equal Protection Clause), third (Right to Free Movement),

fourth (Privileges and Immunities Clause, as to plaintiff F/V Brooke Michelle only), fifth (Procedural Due Process), sixth (Bill of Attainder, all plaintiffs), seventh (Bill of Attainder, as to plaintiffs Dairy, Speer, and Moore only), and ninth claims (Declaratory Relief). *See* Docket No. 21. Plaintiffs filed an amended complaint concurrently with their opposition, in accordance with Rule 15. *See* Docket Nos. 26, 34. On July 23, 2013, this Court issued its order ("Order") granting the motion as to all claims except Plaintiffs' ninth claim. *See* Docket No. 46.

Plaintiffs now move for reconsideration of the Order and for leave to amend the operative complaint. *See* Docket Nos. 52, 53. Specifically, Plaintiffs request the Court (1) reconsider its ruling on their first (Commerce Clause), second (Equal Protection Clause), and seventh (Bill of Attainder, as to plaintiffs Dairy, Speer, and Moore only) claims; and (2) seek leave to amend their complaint as to their first (Commerce Clause), second (Equal Protection Clause), and fifth (Procedural Due Process) claims. This Court granted leave to file the motion for reconsideration and Defendant timely filed their opposition. *See* Docket Nos. 55, 64.

## II. DISCUSSION

### A. Standard of Review

A motion for reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir. 2000). Thus, "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold,* 179 F.3d 656, 665 (9th Cir. 1999). A motion for reconsideration cannot be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation. *Kona Enters.*, 229 F.3d at 890.

### B. Commerce Clause

Plaintiffs contend that this Court committed clear error in two principal respects. First, Plaintiffs contend that the Court's interpretation of the Reauthorization Act of 2007 is clearly erroneous. Second, by upholding Dungeness Crab Trap Limit Program regulations, the Court has

given retrospective effect without clear legislative authority to do so. Neither argument merits the extraordinary remedy of reconsideration.

As an initial matter, Plaintiffs' first contention is properly rejected because it should have been and was not raised before the Court issued its ruling. Plaintiffs raised certain amendments to the Magnuson-Stevens Fishery Conservation and Management Act, Pub. L. 109-479, 120 Stat 3575 (Jan. 12, 2007), § 302(e), M.S.A. § 306 note (16 U.S.C. 1856 note) (hereinafter the "Reauthorization Act of 2007") for the first time in their opposition to Defendant's motion to dismiss, but did not raise the legal contention they do now – that the Reauthorization Act of 2007 does not evince an "unmistakably clear" congressional intent to allow California to regulate the taking of fish and wildlife "by means of laws and regulations that differentiate between residents and nonresidents." Instead, the Court addressed and rejected a different contention offered up by Plaintiffs—that the Reauthorization Act of 2007 supersedes the "Reaffirmation of State Regulation of Resident and Nonresident Hunting and Fishing Act of 2005" (hereinafter the "Reaffirmation Act of 2005") and that the Dungeness Crab Trap Limit Program regulations, which were promulgated under the aegis of the Reaffirmation Act of 2005, violates the former by failing to allocate crab traps "without regard to the State that issued the permit." On a motion for reconsideration, a district court may properly ignore legal argument that the moving party should have and did not raise before the court issued its ruling. *See City of Fresno v. U.S.*, 709 F. Supp. 2d 888, 933 (E.D. Cal. 2010) (citing *389 Orange St. Partners*, 179 F.3d at 665) (finding movant "may not use reconsideration as a means to present arguments that could, and should, have been made before the [district court's ruling on a motion to dismiss] was issued."). Accordingly, Plaintiffs may not properly raise this argument on reconsideration now.

Even so, Plaintiffs' argument that there is no "unmistakably clear" congressional intent to permit California to regulate by discriminatory means in the Reauthorization Act of 2007 is meritless. As this Court noted, Congress' intent to allow California to regulate the taking of crab, even by differentiating between residents and nonresidents, is "unmistakably clear" in the Reaffirmation Act of 2005. *See* Docket No. 46 (Order at pgs. 4-5) (noting the Act expressly covers the regulation of "availability of licenses" by means "that differentiate between residents and

3

nonresidents" and removing any barrier posed by the dormant Commerce Clause, which is further supported by the legislative history). At the same time, this Court held that the Reauthorization Act of 2007 simply *extended* California's authority to "adopt and enforce State laws and regulations governing fishing...within the [EEZ]." Congress's intent to permit California to regulate the taking of crab was not eviscerated or diminished by the Reauthorization Act of 2007. Rather, such intent was reaffirmed therein.

Plaintiffs contend that the Reauthorization Act of 2007 contains a limitation on the state's authority that was not met by California. The Act extended California's regulatory reach into the EEZ so long as California regulated consistently within and outside its boundaries, as follows:

> ". . . [a]ny law or regulation adopted by [California] . . . ***shall apply equally*** to vessels engaged in the fishery in the [EEZ] and . . . in the waters of [California], and without regard to the State that issued the permit. . . . "

Pub. L. 109-479, 120 Stat 3575 (Jan. 12, 2007), § 302(e), M.S.A. § 306 note (b)(1) (emphasis added). It is undisputed that nonresidents are allowed to participate in California's Dungeness crab fishery and are allocated permits under the California's Dungeness Crab Trap Limit Program. Most significantly, the Dungeness Crab Trap Limit Program regulations allocate crab trap permits based on California landings history *regardless of residency*, and thus, does not consider the State that issued a crab fishing vessel's permit.

Plaintiffs' second contention that the Dungeness Crab Trap Limit Program regulations violate the Commerce Clause because it impermissibly has retrospective effect is also meritless. Again, Plaintiffs did not raise this second contention in their opposition and offer no explanation for their failure to do so. Nonetheless, on the merits, the Dungeness Crab Trap Limit Program regulations are not retrospective simply because part of the qualifying period predates the effective date of the statute, May 11, 2005. A statute does not operate retrospectively merely because it is applied criteria based on facts antedating the statute's enactment. *Ditullio v. Boehm*, 662 F.3d 1091, 1099 (9th Cir. 2011) (citing *Landgraf v. US Film Prods.*, 511 U.S. 244, 269–70). Instead, the issue is whether the new provision attaches new legal consequences to events completed prior to its enactment. *Id.* Here, the Dungeness Crab Trap Limit Program regulations do not have retrospective

effect because it *prospectively* allocates crab trap permits. Furthermore, Plaintiffs' contention here concerning the retrospective nature of the Dungeness Crab Trap Limit Program regulations is not properly before this Court because this contention does not relate in any way to the Court's dormant Commerce Clause ruling and was not raised earlier. Thus, Plaintiffs' second contention is therefore denied.

Plaintiffs request to amend their dormant Commerce Clause challenge to assert an "as-applied" challenge:

> "Plaintiffs submit that they allege a legitimate claim under the Dormant Commerce Clause, **as applied** (as they alleged in both the original and First Amended complaints), at least to the extent those landings of crab made by the plaintiffs prior to the effective date of the Reaffirmation Act of 2005 were not considered in establishing their crab trap limits to which it could not have applied."

*See* Docket No. 52 (Mot., at pg. 9). Plaintiffs misconstrue the concept of an "as-applied" dormant Commerce Clause challenge. "An as-applied challenge requires the development of a factual record for the court to consider, addressing 'whether a statute is unconstitutional on the facts of a particular case or to a particular party.'" *See Harris v. Mexican Specialty Foods, Inc.,* 564 F.3d 1301, 1308 (11th Cir. 2009). Plaintiffs' proposed Second Amended Complaint offers no new facts demonstrating that the Dungeness Crab Trap Limit Program regulations violate the dormant Commerce Clause on particular facts or as to a particular party. Instead, Plaintiffs merely assert new legal contentions which facially attack the Crab Trap Limit Program. Further, these new legal contentions are meritless and futile. Accordingly, Plaintiffs' request to amend their dormant Commerce Clause claim is denied as futile.

C.  Equal Protection

Plaintiffs contend that the Court failed to consider material facts (retroactive application of the Dungeness Crab Trap Limit Program regulations) and dispositive argument (the regulations are not rationally related to its stated goals). The thrust of Plaintiffs' contention here is that retroactive application of the regulations is not rationally related to the Defendant's "future economic performance" goals (*i.e.*, conservation of Dungeness crab, fishery management, long-term stability of the fishery, etc.). Stated another way, Plaintiffs contend the *amount* of crab landed is related to

these goals but *where* the crab is landed is not. Though the Court is not unsympathetic to this argument, Plaintiffs previously argued this point; it therefore is not subject to reconsideration. *See* N.D. Cal. Civ. L. R. 7-9(c) ("No motion for leave to file a motion for reconsideration may repeat any oral or written argument.").

Even if it were subject to reconsideration, the Court reaffirms its earlier holding that Plaintiffs failed to overcome the daunting burden of rebutting *every* conceivable bases of the Dungeness Crab Trap Limit Program regulations. This Court identified numerous conceivable bases for the regulations; among them is "[preventing] displace[ment] [of] California permitholders 'who have historically landed substantial amounts of crab in California,' from high trap allocation tiers from the California program." *See* Docket No. 46 (Order, at pg. 10). Protecting the return on investment of those crab fishermen who hold permits to fish in California by preventing their displacement is a legitimate basis for the regulations. While Plaintiffs challenge the use of California *landings* to effectuate this goal, it is a rational means of furthering this goal. There is a strong nexus between fishing in a state's waters and landing in that state.

States of the tri-state Dungeness crab fishery have for a long time connected *crab fishing* within its waters to *crab landings* at its ports. As noted in *Marble v. Dept. of Fish & Wildlife*, since 1995, the state of Oregon has restricted the allocation of limited entry permits "to those Oregon vessels that caught a specified amount of crab at a specified frequency during the late 1980s and early 1990s and lawfully landed that crab ***into Oregon ports***." 236 Or. App. 54, 57 (2010) (emphasis added). Moreover, California requires and charges for a special permit in order to fish in California waters and land the catch outside the state. Calif. Fish & Game Code § 7891. Otherwise, the catch must be landed in California. Plaintiffs do not contest this regulation and at the hearing conceded its constitutionality. Plaintiffs effectively concede that California has a legitimate interest in encouraging that crab fished in California waters to be landed in California. Accordingly, the California-landings-only criteria for allocating crab trap tags is rationally related to a legitimate state interest.

Plaintiffs contend that in focusing on California fisheries, California should have considered actual data of where Dungeness crab was caught, rather than where it was landed. However, the

1 California-landings-only rule is rational proxy for this information. Prior to the Dungeness Crab
2 Trap Limit Program regulations, California similarly regulated crab fishing by issuing limited entry
3 permits, which only limited the number of participating vessels in the Dungeness crab fishery
4 without placing a limit on the number of traps those vessels could deploy. At the time, California
5 did not have precise means for measuring the quantity of crab caught in California waters by each
6 permitholder. Moreover, for the reasons set forth in the State's opposition brief, there is no real
7 dispute that there is a close correlation between crab caught in California waters and that landed in
8 California. *See* Docket No. 64 (Opp'n to Pltf.'s Motion for Reconsideration, at pg. 11 n. 6) (noting,
9 *inter alia*, that undisputed facts from California Department of Fish & Wildlife records show a small
10 fraction of crab fishermen have obtained a section 7891 permit, which is required by California law
11 to land crab outside of California). A perfect proxy is not required to pass constitutional muster.
12 *See e.g.*, *Bowers v. Whitman*, 671 F.3d 905, 918 (9th Cir. 2012) *cert. denied*, 133 S. Ct. 163 (U.S.
13 2012) (noting that in the area of economic legislation, a classification rendered without
14 "mathematical nicety" or that results in some inequality does not violate the Equal Protection
15 Clause) (quoting *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 167 (1980)).

16 Plaintiffs have also moved the Court to amend their Equal Protection Clause challenge in
17 two respects. First, Plaintiffs seek to clarify their assertion of an as-applied Equal Protection Clause
18 challenge. Second, Plaintiffs seek to assert anew a facial challenge based on their status, not as
19 nonresidents, but as a class of all section-7891 permitholders, regardless of residency, who landed
20 outside of California during the Qualifying Period.

21 Plaintiffs' amendment to "clarify" their as-applied challenge is meritless and futile.
22 Specifically, Plaintiffs' proposed amendments do not allege that the statute was applied, enforced, or
23 implemented any differently than against anyone who acted similarly. The proposed Second
24 Amended Complaint fails to allege the Dungeness Crab Trap Limit Program regulations are "applied
25 and administered by public authority with an evil eye and an unequal hand, so as practically to make
26 unjust and illegal discriminations between persons in similar circumstances." *U.S. v. Pitts*, 908 F.2d
27 458, 460 (9th Cir. 1990) (internal citations omitted) (finding insufficient allegations of an as-applied
28 challenge to penalty enhancement statute for drug dealing within a "school zone" – 1,000 feet of a

7

1  grade school or other specified institution – where defendant only alleged that the class consisted of
2  persons selling drugs within the "school zone"). Plaintiffs' proposed Second Amended Complaint
3  contains no allegations that the Dungeness Crab Trap Limit Program regulations were "applied and
4  administered" in a discriminatory manner. Irrespective of Plaintiffs' attempt to recharacterize their
5  Equal Protection claim, their challenge to the California-landings-only rule remains in essence a
6  facial challenge. At most, the facts alleged in the Second Amended Complaint inform the facial
7  constitutionality of the challenged regulations, not the constitutionality of any particular manner of
8  enforcement of the statute as applied.

9  As to the assertions based on a refined definition of the class, Plaintiffs' attempts to launch
10 new as-applied Equal Protection Clause challenges similarly fail. Rather than stick to their earlier
11 classification (*i.e.*, resident vis-à-vis nonresidents), Plaintiffs request to amend their operative
12 complaint to further refine the alleged suspect class ostensibly in two proposed ways – *i.e.*, (1) crab
13 fishermen who landed crab within California vis-à-vis those who landed outside California; or (2)
14 crab fishermen who landed crab within California vis-à-vis those who landed outside California
15 pursuant to their section 7891 permits. The difference between the two proposed classes is subtle.
16 But it appears Plaintiffs are trying to refine the alleged classification from residents vis-à-vis
17 nonresidents to two classes of crab fishermen based on where they landed crab – *i.e.*, inside
18 California vis-à-vis outside of California. However, this new classification tracks the language of
19 the regulation's California-landings-only rule, by creating classes of those who landed inside and
20 those who landed outside of California, this inherently constitutes a facial challenge to the statute.

21 Furthermore, Plaintiffs' proposed classifications make no material difference. The two new
22 proposed classifications would be vulnerable to the same deficiencies discussed herein; namely,
23 Plaintiffs have failed to allege that the State "applied and administered" the Dungeness Crab Trap
24 Limit Program regulations "with an evil eye and unequal hand." Moreover, the recharacterized
25 classifications do not materially affect the Court's conclusion that the statute draws distinctions
26 which are rationally related to a legitimate state interest.

27 D. <u>Bill of Attainder</u>

28 Plaintiffs contend that the Court manifestly failed to consider facts that would have given

8

rise to an inference that the Dungeness Crab Trap Limit Program regulations specifically name the alleged targeted class (*i.e.*, section 7891 permitholders). To be sure, the facts Plaintiffs now identify as supporting an inference they were specifically named, was not cited in their opposition to the Government's motion to dismiss or in the relevant portion of First Amended Complaint. *See e.g.*, Docket No. 53 (Mot., at pg. 8) ("FAC ¶¶ 34 and 35 allege facts about putting a 'halt to the annual cross border race for crabs that threatens the livelihoods of our fishermen' and ¶¶ 29 and 30 allege facts about the failure to appoint any non-resident permit holder to serve on the Dungeness Crab Task Force that made the recommendations to the Legislature that resulted in SB 1690 and the California landings criterion in § 8276.5(a)"). These facts do not relate to whether Plaintiffs, or a subset of them, have been explicitly or effectively specified.

The relevant portion of the First Amended Complaint merely concludes that the alleged targeted class is "easily ascertainable" without alleging specific facts.[1] The Court need not assume the veracity of pure legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth."); *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1141 (9th Cir. 2003) ("While a court must accept all factual allegations as true, it need not accept as true any 'legal conclusions merely because they are cast in the form of factual allegations.'") (internal citations omitted).

Even if the Court were to revisit its ruling on specificity, Plaintiffs have failed to allege sufficient facts making out a plausible claim that the subject regulations are punitive within the meaning of the Bill of Attainder Clause. Plaintiffs do not allege they were completely or substantially barred from any "specific employments or vocations," a traditional or historical form of punishment. Plaintiffs' allegation that the regulations lack "legitimate justification," for the reasons previously stated in the context of the equal protection analysis, is meritless. Particularly with regard to the state interest described above, Plaintiffs have failed to demonstrate there are

---

[1] While Plaintiffs do contend in their *opposition* that the alleged targeted group can be identified from agency records, Plaintiffs do not so allege in the operative complaint, even after amending their original complaint.

alternative means of furthering the legislative purpose.

Finally, Plaintiffs' assertion of punitive intent is contradicted by available evidence, which counsel for Plaintiffs did not refute and accordingly this Court takes judicial notice,[2] showing that a disproportionate number of nonresident Dungeness crab fishermen are assigned to the *highest* trap tier – *i.e.*, nonresidents comprise a higher percentage of the highest tier than other of the four remaining lower tiers, except tier 4. *See* Docket No. 65-1 (Ex. 1 to Opp'n to Pltf.'s Mtn. for Reconsideration) (California Dept. of Fish & Wildlife data titled "Commercial Fishing Licenses and Permits"). Accordingly, the Court denies reconsideration of its bill-of-attainder ruling.

E. Procedural Due Process

Plaintiffs have not moved the Court to reconsider its ruling on their Procedural Due Process Clause claim. Rather, Plaintiffs now seek leave to amend their procedural due process claim – *i.e.*, that the appeals process under the Crab Trap Limit Program regulations to challenge initial allocations is inadequate. Plaintiffs have attacked the appeals process as futile, yet failed to show such futility. First, Plaintiffs allege that the ALJ presiding over appeals can only hear evidence of medical hardship or military service. This is demonstratively false. In fact, the ALJ may consider any evidence showing "unusual circumstances" creating an "unfair hardship." Plaintiffs do not contradict this conclusion on reply and conceded at the hearing they were in error. *See* Docket No. 62 (Errata to Reply, at pg. 13). Second, Plaintiffs contend that the appeals process would take longer than the current lawsuit. This argument is speculative. The Dungeness Crab Trap Limit Program regulations do not specify a time frame for resolution of an appeal. There is simply no way of knowing whether an appeal or the current lawsuit will be resolved faster. In any event, this particular argument presents a ripeness problem.

Accordingly, Plaintiffs request for leave to amend their Procedural Due Process Clause

---

[2] Plaintiffs did not oppose Defendant's request for judicial notice. *See* Docket No. 59 (Dft.'s RJN). The Court accordingly takes judicial notice of the data compiled by the California Department of Fish & Wildlife, attached to their opposition of Plaintiffs' motion for reconsideration, as matters of public record that are not subject to reasonable dispute. *See* Fed. R. Evid. 201(b)(2); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1223 (9th Cir. 2004) (noting that a court "may take judicial notice of a record of a state agency not subject to reasonable dispute" without converting a motion to dismiss into one for summary judgment).

claims is denied as futile.

### III. <u>CONCLUSION</u>

Based on the foregoing, the Court Plaintiffs' motion for reconsideration and motion for leave to amend are **DENIED**.

This order disposes of Docket Nos. 52 and 53.

IT IS SO ORDERED.

Dated: October 17, 2013

_____
EDWARD M. CHEN
United States District Judge